NATHANIEL HAYNES and another *vs.* MOSES JACKSON.

*Deed—exception in, how construed.  Boundary—authority of person to establish.*

The owner of a tract of land, consisting of highland and meadow, conveyed the whole tract, "excepting from said tract the meadow land on the westerly end of said tract, extending to the highland on said tract, containing from two to three hundred acres, more or less; said boundary by 'highland' to be located and monuments fixed by " the grantee and another person named, both of whom, within six days thereafterwards, placed a hub on the north line of the tract, and commenced following the line of the highland which was plainly distinguishable; but finding it would contain numerous angles, they sighted a straight line between the hub and a lone pine standing near the south line of the tract, and established the line from the hub to the south line in the direction of the pine and placed stakes thereon, ten or twelve rods apart. Subsequently the original grantor conveyed to the defendant "the meadow land on the west end of the tract, extending to the highlands,— said meadow containing two to three hundred acres,—the easterly part of said tract having been previously deeded; and the intention of this deed is to release all my title and interest in the remaining portion of said tract, the boundary line between the former and present grantees to be established if not already done, as provided for, in" the former deed. When the defendants purchased, they were informed of and shown the line established between the hub and pine. *Held,* that the former deed conveyed all the highland and the latter all the meadow; and that the distinguishing line between the highland and meadow and not the straight line between the hub and pine was the true line.

ON REPORT.

TRESPASS, QUARE CLAUSUM.

KENT, J.   Samuel H. Blake was the owner of a large tract of land containing about one thousand acres, called the Southgate tract, consisting of upland and meadow.   On the 9th of June, 1862, he conveyed the upland to Ritchie.   This deed covered the whole tract in the description, but excepted and reserved from the tract described "the meadow land on the westerly end of said tract, extending to the highland on said tract, said excepted parcel and not hereby conveyed, containing two or three hundred acres, more or less."   Then follows the provision, which has led to this controversy, in these words:  "Said boundary by the 'highland' to be located and monuments fixed by said Ritchie and W. Lord."

On the 25th of April, 1864, Blake conveyed, by deed, to the defendants, "the meadow land on the west end of the Southgate tract, so called, extending to the highland on said tract.   Said meadow land containing two or three hundred acres, more or less. The easterly part of said Southgate tract, was deeded to E. C. Ritchie, 9th June, 1862, and the intention of this deed is to release all my title and interest in the remaining portion of said tract.   The boundary line between Ritchie and the present grantees to be established, if not already done, as provided for in Ritchie's deed."

It is undisputed that by the deeds, irrespective of the provision for locating the boundary by the highland by Ritchie and Lord, that the *locus in quo* is within the deed to the defendants, *i. e.* is a part of the meadow land.   It is clear that Blake intended to convey all the meadow to the defendants and all the highland—as distinguished from meadow land—to the plaintiffs' grantors.   The case finds that "there was no trouble in distinguishing the line between the highland land and the meadow."   That, therefore, is the line intended, and must govern, unless by some deed or proceeding a part of the meadow, within that well-defined line, has become the property of the plaintiffs.

It appears from the report of the case, according to the testimony of W. Lord, that he and Ritchie, the grantee in the first deed, went

on to the land, and placed a hub at Birch Point and commenced following the line of the highland; that finding the line along the highland would have a dozen angles to run, they went back to the hub, began at and sighted a lone pine tree, near (not on) the south line of the Southgate tract, and established the line from the hub to the Southgate line in the direction of the pine tree. They then placed ten or twelve stakes, about ten rods apart, in the line thus established, adopting the pine tree as the other end of the line. This line is manifestly a forced one, not corresponding in any particular with a boundary by the highlands, but a substitute for it. Had the two persons designated by Mr. Blake and his grantee a legal right to extend or limit the grant, in this manner disregarding intentionally and confessedly the line of the deed?

This is not a case like those cited by the plaintiffs' counsel, where it is held that when a deed refers to a monument, not actually existing at the time the deed is made, and the parties afterwards fairly erect such monument, intending to conform to the deed, it will control, although not wholly agreeing with the terms of the deed. Nor does it present the question how far the grantor and grantee can by agreement fix arbitrarily and by mutual assent a line which, except in the starting point, varies in every particular from the clearly defined line of the deed, thus, in fact, conveying land by parol agreement, and leaving the recorded deed to stand as a false description.

In this case Blake was the owner of the whole tract. He deeds to Ritchie, by a description before stated, reserving all the meadow land extending to the highland. But as this boundary by the highlands, although, as the case expressly finds it was plain, and that there was no trouble in distinguishing the line, between the highland and the meadow, had never been run and located by monuments, it is specified that one W. Lord and Ritchie the grantee should locate it and fix monuments. What was the authority thus given to bind Blake the owner? It was to locate the line of boundary by the highland and to place monuments along that line and at its *termini*. If they had performed this duty fairly, and intending to locate the line, in its whole course, at the dividing point,

where the meadow ceased, and where the highland began, it would have been binding, although at some places there might be a doubt as to the exact point of division. They did, in fact, commence by following the line of the highland, but simply because they found that there would be an unusual number of angles in that line they abandoned the attempt to locate and fix the monuments by the highland, but adopted a single straight line, for the whole distance, in the direction of a lone pine tree, and established that as the line. The distance of this line is not stated in the report, but from the extent of the whole tract it must have been from one to two miles in length. The counsel states that it gives to the plaintiffs from sixty to one hundred acres of clearly defined meadow land. The exact quantity is not essential in determining the question before us.

There is no evidence that Blake ever assented to this substitution of this adopted line, or that he knew that the persons named had undertaken to act. On the contrary, it appears that in 1864, nearly two years afterwards, Blake conveyed to the defendants all this meadow land, extending to the highland of said tract, and declaring in his deed that it was his intention thereby to release all the title and interest in the remaining portion of the Southgate tract not deeded to Ritchie, and also declaring that the boundary line between Ritchie and the present grantees, is to be established, if not already done, as provided for in Ritchie's deed. He does not adopt any line made by these two men, or make that the dividing line. He does not know, apparently, what they have done, or whether they have acted at all. He simply guards himself from any claim or complaint if the line has been legally established, in a manner binding upon him by these arbitrators, or if it shall be so established hereafter by these men, acting within the scope of their authority.

There is no recognition of their doings beyond this.

The case also finds that when the defendants purchased they were told of the line as established from the hub to the pine tree, and were informed where the hub was, and of the pine tree and of the line between. But it does not appear that they acted on this

information, or purchased the tract, as bounded by that line, or that they made any admissions or acted at all upon this information. They took the deed from the owner, before recited, which provided for the locating this line, as provided in Ritchie's deed. We have considered the extent of that authority, and to that extent only are the defendants bound by the terms of the deed to them.

The case of *Wyman* v. *Hammond*, 55 Maine, 534, is in principle much like the one before us. It was there held, that upon a submission to a surveyor, with an agreement that he was to run the line in dispute, agreeably to the decision and line of one Bliss in a former year, the arbitrator could only ascertain what that decision was, and fix the line according to Bliss' survey. The authorities are very numerous which establish the general doctrine that an award must follow the agreement of submission, and that the party thus clothed with specific powers, limited by the agreement of the parties, cannot go beyond or disregard those limitations, or substitute his own views of what would be best for the parties. We repeat what was said in the case cited, that " it is unnecessary to cite authorities on this point."

To compare small things with great, this case reminds us of the decision of the royal umpire, in the matter of our north-eastern boundary forty years ago, when he fixed the " highlands," named in the treaty as the dividing line, in the bed of the St. John River. It was admitted on all hands that he exceeded his delegated power.

The report provides that if the line, as agreed upon by Lord and Ritchie, is binding upon the parties, a default is to be entered, if not a nonsuit. We think it is not.                    *Plaintiff nonsuit.*

APPLETON, C. J.; WALTON, DICKERSON, and DANFORTH, JJ., concurred.

*Charles N. Hersey*, for the plaintiffs.

*A. Knowles*, for the defendant.